LATHAM & WATKINS LLP
Niall E. Lynch (CA 157959)
Ashley M. Bauer (CA 231626)
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095
*niall.lynch@lw.com*
*ashley.bauer@lw.com*

Sean M. Berkowitz (*pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: +1.312.876.7700
Facsimile: +1.312.993.9767
*sean.berkowitz@lw.com*

*Counsel for Defendant StarKist Co.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STARKIST CO.,<br><br>Defendant. | CASE NO. 18-CR-0513 EMC<br><br>**STARKIST CO.'S RESPONSE TO DIRECT PURCHASER PLAINTIFFS' OPENING STATEMENT REGARDING STARKIST'S SENTENCING PURSUANT TO THE CRIME VICTIMS' RIGHTS ACT ("CVRA"), 18 U.S.C. § 3771, AND INDIRECT PURCHASER END PAYER PLAINTIFFS' STATEMENT IN CONNECTION WITH DEFENDANT STARKIST CO.'S EVIDENTIARY HEARING PURSUANT TO THE CRIME VICTIMS' RIGHTS ACT ("CVRA") 18 U.S.C. § 3771**<br><br>Judge: Hon. Edward M. Chen<br>Date: June 12, 2019<br>Courtroom: 5 – 17th Floor |

**<u>REVISED REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED</u>**

Defendant StarKist Co. ("StarKist") respectfully submits this consolidated opposition to (1) the putative Direct Purchaser Plaintiffs' ("DPPs") Opening Statement Regarding StarKist's Sentencing Pursuant to the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771 ("DPPs' Statement"), and (2) the putative Indirect Purchaser End Payer Plaintiffs' ("EPPs") Statement in Connection with StarKist's Evidentiary Hearing Pursuant to the CVRA ("EPPs' Statement"). StarKist opposes DPPs' and EPPs' (collectively, "Plaintiffs") proposals for StarKist to deposit $50 million and $65 million, respectively, with this Court so that the Court can manage the disbursement of civil settlement funds or civil money judgments. StarKist also reserves the right to object or respond to any additional proposals, arguments, or information DPPs or EPPs submit to the Court regarding StarKist's sentencing.

## I. INTRODUCTION

StarKist and the Court have already recognized that Plaintiffs have "the right to be reasonably heard at any public proceeding . . . involving . . . sentencing." 18 U.S.C. § 3771. But Plaintiffs have not established that they have the right to seek to compel StarKist to deposit in *this* case $115 million that DPPs and EPPs claim they are entitled to as damages in *a different* civil case. In addition, Plaintiffs' "statements" are replete with misleading assertions and misstatements of fact that do nothing more than distract from the issues relevant to StarKist's sentencing. The sole question relevant to determining the appropriate fine in this case is whether StarKist can afford a $100 million fine without impairing its ability to make restitution or "substantially jeopardizing [its] continued viability." *See* U.S.S.G. § 8C3.3. Plaintiffs' unprecedented proposals support StarKist's argument that the Company faces substantial civil liability. To the extent that DPPs and EPPs ask the Court to address more than this core question, their requests are improper and should be denied.

## II. DISCUSSION

### A. Plaintiffs' Proposals Are Improper, and This Is Not the Appropriate Forum to Litigate Plaintiffs' Damages in the Civil Case

DPPs ask the Court to order StarKist to "pay up to $50 million into the Court's registry, which can then be credited back to StarKist" as StarKist pays the civil plaintiffs the damages

they seek.[1] DPPs' Statement at 8. EPPs ask the Court to order StarKist to deposit an additional $65 million in a "Court Fund" for EPPs alone, which is *on top of* the criminal fine that the Court ultimately imposes. EPPs' Statement at 2. EPPs also "invite the Court to provide any amount paid above the $65 million amount to consumers to be an offset against the fine." *Id.* at 4.

Plaintiffs' proposals are unprecedented, unclear, and impractical. *First*, neither DPPs nor EPPs cite any authority demonstrating that their proposals are an appropriate means of dispersing civil damages. DPPs and EPPs are effectively asking this Court to order StarKist to pay enormous sums to Plaintiffs' benefit without undertaking the work necessary to determine whether Plaintiffs were damaged in those amounts, while this very issue is currently being litigated and will be decided in the related civil multidistrict litigation ("MDL") before Judge Sammartino. Plaintiffs are trying to upend the normal course of litigation, essentially asking this Court to award damages before they are proven. Plaintiffs do not point to any cases where a court has ordered such set asides without undertaking a rigorous analysis. In cases where courts grant restitution, courts must first positively identify each victim of the offense and determine the amount of loss sustained by each victim. *See United States v. Barany*, 884 F.2d 1255, 1260 (9th Cir. 1989) ("The amount of restitution . . . must be definite and limited by the amount actually lost by the victims." (quoting *United States v. Pomazi*, 851 F.2d 244, 250 (9th Cir. 1988)).

*Second*, neither DPPs nor EPPs describe the mechanisms by which the Court would administer the registry or fund, monitor settlements, and implement the various credits, set-offs, and return of funds that Plaintiffs envision. Plaintiffs devote little more than a few paragraphs to explaining a novel process that would be undoubtedly complicated and burdensome for this Court. DPPs do not cite any case law in which a court ordered a criminal defendant to pay into a court registry and then credited the defendant's restitution in the civil case against its criminal fine and do not explain how that would work. Similarly, EPPs cite no cases where courts have

---

[1] During plea negotiations, StarKist proposed to the Department of Justice ("DOJ") that StarKist would pay a $50 million fine and provide DOJ with reports on the status of StarKist's settlements with the civil plaintiffs, returning the difference (if any) to DOJ in the form of a fine if StarKist settled its remaining claims for less than $50 million. DOJ rejected StarKist's offer. Decl. of Niall E. Lynch in Support of StarKist's Response to U.S. Sentencing Mem. ¶ 13. StarKist remains open to this solution and explains it in detail below. *See infra* Part III.

required a defendant to place restitution into a "Court Fund" and then use any additional settlement funds to set off the criminal fine.

*Finally*, and most importantly, Plaintiffs propose an impossible solution. Plaintiffs appear to envision that StarKist will pay these quasi-restitutionary funds immediately and in full—to the tune of $115 million. *See* DPPs' Statement at 8 (proposing that StarKist should "initially pay up to $50 million into the Court's registry" in order to "timely and fully account for its misconduct"); EPPs' Statement at 4 (arguing that StarKist should pay $65 million into a Court Fund so that it does not "have that money free and clear and available for its own corporate purposes"). As detailed at length in its Sentencing Memorandum, StarKist does not have $115 million to deposit with the Court. *See* Decl. of Niall E. Lynch in Support of StarKist's Response to U.S. Sentencing Mem., Ex. 8 (showing StarKist's cash balance as of May 13, 2019 at approximately $6.3 million). Plaintiffs' proposals are imprecise and are not a viable means of ensuring StarKist's victims are repaid.

Regardless of the mechanics of Plaintiffs' proposals, this criminal sentencing is not the proper forum for Plaintiffs to obtain damages. By asking the Court essentially to administer civil damages in a criminal sentencing, Plaintiffs' proposals amount to nothing more than an attempted end-run around criminal restitution and the ongoing civil litigation. Indeed, although DPPs assert they "are *not* asking for the Court to order criminal restitution," they admit that their proposal would "serve the . . . goal[] of . . . restitution." DPPs' Statement at 8 (emphasis in original). But StarKist's plea agreement explicitly states DOJ will not seek restitution here and will instead rely on the related civil MDL to provide restitution to the victims. This Court should not now entertain Plaintiffs' proposals for criminal restitution under another name.

In complex antitrust cases, courts frequently decline to impose criminal restitution because calculating the appropriate amount of restitution is best resolved in the related civil case, *see, e.g.*, *In re Acker*, 596 F.3d 370, 373 (6th Cir. 2010), and the concerns underlying courts' reluctance to order restitution are equally at issue with Plaintiffs' proposals. In cases like this, identifying each victim and the actual loss they each sustained would require "determining

complex issues of fact related to the . . . amount of the victim's losses."[2] *See* U.S.S.G. § 8B1.1(b)(2). Assessing the amount owed to the various groups of plaintiffs would necessitate extensive fact-finding and exacerbate an already burdensome process at the last minute. By asking the Court to set aside tens of millions of dollars and then administer various credits and set-offs through some unspecified mechanism, Plaintiffs' proposals "would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." *Id*.

Importantly, the parties are already litigating the factual issues regarding the amount of overcharge to each group in the parallel civil MDL in the Southern District of California. DPPs and EPPs concede as much. *See* EPPs' Statement at 2-3 (admitting that the "amount of damages the plaintiffs in the Civil Action suffered remains a contested issue between the parties" and that the "case has been the subject of near daily activity since its inception"); DPPs' Statement at 1 (noting the "complex issues surrounding the damages" in the civil MDL). Plaintiffs submitted along with their Statements nearly a hundred pages of expert reports addressing issues related to StarKist's finances and purported overcharge, further demonstrating the complexity of these disputes. Plaintiffs should not burden this Court with the duplicative assessment of damages owed to each purported class when the civil case is the more appropriate forum to determine and administer civil damages.

### B. Plaintiffs' Statements Are Premised Upon Misstatements of Fact and Irrelevant Assertions

Even if the criminal sentencing hearing were a proper venue for litigating Plaintiffs' civil damages (it is not), Plaintiffs' Statements contain numerous misleading statements that require correction. DPPs insinuate that StarKist's position that a $100 million fine would impair its ability to make restitution is disingenuous because StarKist asserts that "DPPs suffered no

---

[2] Judge Donato recently questioned the wisdom of imposing criminal restitution in complex antitrust price-fixing cases. *See* Transcript of Proceedings at 14-16, *United States v. Elna Co., Ltd.*, No. 4:16-cr-00365 (N.D. Cal. Jan. 31, 2018), ECF No. 55. The issue was fully briefed by the defendant, the Government, and a group of plaintiffs from the corresponding civil case. *Elna*, No. 4:16-cr-00365 (N.D. Cal. Mar. 15, 2018), ECF Nos. 65, 66, 67. Judge Donato declined to order restitution. Order, *Elna*, No. 4:16-cr-00365 (N.D. Cal. April 2, 2018), ECF No. 73.

financial injury during" StarKist's plea period. DPPs' Statement at 1 n.1. This is a misleading and incomplete analysis of StarKist's expert's report. [redacted][3] that does not mean that StarKist will evade accountability for civil damages. StarKist has already entered into settlements with many direct action plaintiffs, and the Company estimates significant additional exposure. *See* StarKist's Sentencing Mem. at 19. In fact, StarKist has opened settlement discussions with all plaintiff groups. Certain groups have not responded despite repeated promises to do so. If anything, DPPs' argument proves that the issue of overcharge in the civil cases is complicated and that their proposal "creat[es] a system that would, essentially, turn criminal sentencing hearings into complicated, prolonged trials of the normal civil variety." *United States v. Gordon*, 393 F.3d 1044, 1060 (9th Cir. 2004) (Fernandez, J., concurring and dissenting).

Similarly, EPPs appear to argue that StarKist is attempting to evade civil liability by "intensely litigat[ing] the consumer class action" rather than "making efforts to come to the negotiating table early." EPPs' Statement at 3. Setting aside EPPs' incredible suggestion that StarKist should simply decline to litigate the civil action in accordance with the Court's schedule, EPPs admit that StarKist has already settled with "more than 70% of the retail market."

---

[3] StarKist's expert economist's conclusion regarding damages is unsurprising given that DPPs' allegations sweep much broader than StarKist's plea agreement. Specifically, DPPs argue that the conspiracy encompassed *all* packaged-tuna products, including both cans and pouches in all sizes (from 2.6-ounce to 66-ounce products). DPPs' class definition includes, for example, purchases of institutional food service-sized cans and pouches. But the volume of commerce associated with StarKist's plea agreement does not include food service cans of tuna or pouches. [redacted] As such, DPPs are being disingenuous by suggesting that StarKist's expert concluded that DPPs were not injured during the plea period. Regardless, DPPs' arguments on this point are irrelevant because DPPs clearly anticipate obtaining some restitution as evidenced by their proposal for the specific amount of $50 million.

*Id.* StarKist has accepted responsibility for its actions, but the factual and financial issues related to damages in Plaintiffs' cases are complex. StarKist cannot be expected to settle with each and every civil plaintiff all at once and on Plaintiffs' terms.

DPPs devote nearly three pages to an irrelevant and misleading discussion of the relationship between StarKist and its parent company, Dongwon Industries Co., Ltd. ("Dongwon Industries").[4] To begin with, Dongwon Industries is not a defendant in the criminal case, and so any discussion of its finances has no bearing on the issues in StarKist's sentencing. Nonetheless, DPPs describe at length how StarKist supposedly "transferred cash it received . . . to its parent" and urge the Court to "look more deeply at the arrangements between StarKist and other members of the Dongwon Group." DPPs' Statement at 5-7. DPPs' assertions are incorrect and misleading because, as StarKist's expert and Stanford Law School professor Robert M. Daines explained, the relationship between StarKist and Dongwon Industries is "unremarkable and uncontroversial for large corporations and their subsidiaries." Decl. of Niall E. Lynch in Support of Response to Plaintiffs' Sentencing Statements, Ex. 1 ("Daines Report") ¶ 11.

For instance, DPPs take issue with the fact that StarKist paid Dongwon Industries "approximately [redacted] in dividend payments between 2009-16"; that StarKist engaged in a stock buyback in the amount of [redacted]; and that Dongwon Enterprise (the parent corporation of Dongwon Industries) guaranteed some of StarKist's debt. DPPs' Statement at 5-6. Of course, paying dividends, guaranteeing loans, and participating in stock buybacks are "all part of normal corporate behavior." Daines Report ¶ 83. And the amounts at issue are not out of the ordinary. For example, StarKist's dividend payments to Dongwon Industries were actually *lower* than those of comparable publicly traded companies for every year from 2009 through 2018. *Id.* ¶ 135. Additionally, the loan guarantee fees were independently audited and found to reflect market rates. *Id.* ¶ 128. Plaintiffs also note that StarKist has acquired an interest in other companies, including Techpack Solutions Co. Ltd. ("Techpack") and Silver Bay Seafoods LLC ("Silver Bay"). DPPs' Statement at 6-7. But these investments are actually assets: [redacted]

---

[4] DPPs make numerous references to the "Dongwon Group," which is not a legal entity. DPPs' use of the term is intended to blur the distinctions between StarKist, Dongwon Industries, and Dongwon Industries' parent company, Dongwon Enterprise Co., Ltd. ("Dongwon Enterprise").

[redacted] and the Techpack investment is now more valuable than the capital originally contributed. Daines Report ¶¶ 74, 84. None of these transactions is indicative of asset stripping or undercapitalization, as DPPs imply.

### C. DPPs' and EPPs' Demands Prove that StarKist Is Facing Monumental Civil Liability

DOJ and Dr. Zuehls claim that StarKist has overestimated the extent of its civil liability. But if Plaintiffs' statements prove anything, it is that StarKist has provided *modest* estimates for the settlements it hopes to reach with the remaining civil plaintiffs. *See* StarKist Sentencing Mem. at 1 (estimating minimum remaining civil liability). DPPs, for instance, suggest that StarKist is destined to settle with the remaining civil plaintiffs for at least $50 million. *See* DPPs' statement at 1, 8. EPPs, on the other hand, allege that StarKist overcharged them by $55 million and is on the hook for the entire $224 million in overcharges allegedly arising from the conspiracy. EPPs' Statement at 3. Trebled, EPPs explain, the total damages incurred by EPPs alone—and for which StarKist is purportedly responsible—"are in excess of $500 million." *Id.* DPPs assert that they seek to "protect the interests of the victims," *see* DPPs' Statement at 5, and EPPs note that "the interests of justice are . . . best served by ensuring that these victims' interests are adequately protected," *see* EPPs' Statement at 3. These very concerns underlie StarKist's request for a reduction of the criminal fine to $50 million. If nothing else, the Court should credit Plaintiffs' Statements to the extent they prove that StarKist's estimated civil liability is neither speculative nor trivial: The fact that two classes of civil plaintiffs deemed it necessary to file statements demonstrates the validity of StarKist's inability to pay concerns.

## III. STARKIST'S ALTERNATIVE PROPOSAL

As detailed in StarKist's Response to United States of America's Sentencing Memorandum, StarKist respectfully requests a $50 million fine paid out in reasonable installments over five years, without interest. To ensure that StarKist is able to compensate the remaining plaintiffs in the civil cases, StarKist renews its proposal to DOJ during settlement negotiations: that the Company allocate $50 million in future cash flows to the criminal fine on an installment schedule set by the Court without interest and allocate an additional $50 million in

future cash flows to civil damages. StarKist would report to DOJ (and would also update the Court) regarding future civil settlements or judgments, if any, whenever a new settlement or judgment is entered until such time as StarKist has expended $50 million in settlements or judgments. If StarKist is able to resolve all of its remaining civil liability for less than $50 million, then any of the remaining unused funds would revert to DOJ at the end of five years. This proposal would involve StarKist periodically apprising DOJ and the Court of the status of its settlements, but would not require the Court to weigh in on the issue of whether civil Plaintiffs have been damaged and, if so, by how much and would not require ongoing probation, which both DOJ and StarKist have agreed is unnecessary here.

## IV. CONCLUSION

For the foregoing reasons, StarKist respectfully requests that the Court deny (1) DPPs' request for StarKist to deposit $50 million with the Court and (2) EPPs' request for StarKist to deposit $65 million with the Court.

Dated: May 29, 2019

Respectfully submitted,

LATHAM & WATKINS LLP
Niall E. Lynch
Sean M. Berkowitz
Ashley M. Bauer

By: ______________________
Niall E. Lynch

*Counsel for Defendant StarKist Co.*