LATHAM & WATKINS LLP
Niall E. Lynch (CA 157959)
Ashley M. Bauer (CA 231626)
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095
*niall.lynch@lw.com*
*ashley.bauer@lw.com*

Sean M. Berkowitz (*pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: +1.312.876.7700
Facsimile: +1.312.993.9767
*sean.berkowitz@lw.com*

*Counsel for Defendant StarKist Co.*

(Additional counsel listed on signature page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STARKIST CO.,<br><br>Defendant. | CASE NO. 18-CR-0513 EMC<br><br>**JOINT STATEMENT REGARDING SENTENCING**<br><br>Judge: Hon. Edward M. Chen<br>Date: September 11, 2019<br>Time: 10:00 a.m.<br>Courtroom: 5 – 17th Floor |

## I. INTRODUCTION

Pursuant to the Court's order for the Parties to meet and confer with one another and with the Probation Office "to determine whether conditions of probation can be fashioned to impose a $100M criminal fine while affording some relief if that fine impairs StarKist's ability to pay restitution" (Criminal Minutes, Aug. 7, 2019, ECF No. 163), StarKist Co. ("StarKist") and the Department of Justice ("DOJ" or "government") met and conferred telephonically with each other and also communicated with the Probation Office. Because StarKist and DOJ could not reach an agreement, the Parties, along with the Probation Office, submit this joint statement with separate proposals for the Court's consideration.

## II. STARKIST'S STATEMENT

In response to the Court's concerns regarding StarKist's ability to pay restitution to civil plaintiffs and its investment in Techpack Solutions Co., Ltd. ("Techpack"), StarKist proposed an alternative fining structure to DOJ. StarKist's proposal would provide a "safety valve" that allows StarKist the flexibility it needs to pay restitution in the remaining civil cases, while still protecting DOJ's ability to obtain a $100 million fine if StarKist's predictions regarding its ability to pay a criminal fine of more than $50 million do not come to fruition. StarKist's proposal accounts for the uncertainty regarding both civil liability and a potential sale of Techpack and is designed to satisfy the Court's objectives. StarKist also proposed a payment schedule that would allow StarKist to pay the majority of its immediate free cash flow to civil plaintiffs with graduated fine payments to DOJ payable without interest. DOJ summarily rejected StarKist's proposals and did not even offer a counter proposal. Therefore, StarKist presents its proposals to the Court for consideration.

StarKist proposes that the Company pay a fine of $100 million unless one (or both) of two conditions occur. *First*, if StarKist settles its remaining civil claims for $67 million or more (*i.e.*, the cash it will have available for criminal and civil liability after subtracting the $50 million minimum DOJ fine and $54 million in civil settlements paid to date from its $171 million projected free cash flow), StarKist will pay a total fine of $50 million because all of its free cash flow will have been used on restitution. If it settles the remaining civil cases for anywhere

between $17 million and $67 million, StarKist will remit the remainder of the $67 million to DOJ, up to a total fine of $100 million.[1] *Second*, if StarKist sells Techpack, it will pay the remaining $50 million criminal fine to DOJ, for a total fine of $100 million.

StarKist has given thought to the Court's question regarding whether the Court has the power to issue an order that provides for a fine with such a safety valve. *See* Tr. of Proceedings at 52–54, Aug. 7, 2019, ECF No. 164. StarKist concludes that a safety valve is appropriate only if it is based on concrete events that would allow the Court to make a finding of StarKist's current and future ability to pay at the time of sentencing and would not force the Court to reopen the ability-to-pay analysis at some point in the future. Once the Court imposes the fine, neither StarKist nor the Court can initiate on their own a reduction of the fine amount by engaging in a new ability-to-pay analysis down the line. That would be impermissible because the Court must decide StarKist's ability to pay at the time of sentencing. *See United States v. Robinson*, 20 F.3d 1030, 1035 (9th Cir. 1994). But, StarKist's proposed fining structure, which is similar to the Bumble Bee structure that the Court imposed, complies with the law because it would allow the Court to impose a fine now based on StarKist's ability to pay with concrete triggers for additional payments if specific conditions occur.

DOJ argues that no safety-valve is necessary and promises to petition the Court for a reduction of the fine pursuant to 18 U.S.C. §3573 if, during the next five years, StarKist can convince DOJ that it cannot pay the remaining amount due on the fine. But when pressed, DOJ would not agree to any specific objective milestones, such as certain threshold civil liability amounts or the sale of Techpack, as a basis upon which it would guarantee StarKist that it would petition the Court to reevaluate the fine. Indeed, DOJ offers no guarantee that it will ask the Court to reduce the fine under any specific conditions, which is tantamount to an empty promise. At a minimum, even if the Court imposes a $100 million fine with no safety valve, the Court should require DOJ to make a motion for a reduction if StarKist's civil liability and free cash flow projections turn out to be accurate.

---

[1] The formula for determining the reversion to DOJ is available free cash flow after paying existing civil settlements and $50 million DOJ fine minus remaining settlement amounts ($X) = additional fine ($Y) to DOJ (or $171 million - $50 million - $54 million - $X = $Y) .

StarKist also asks that if the Court imposes a $100 million fine, that the installment plan take into consideration StarKist's current financial condition and its need to fund civil settlements. DOJ has asked the Court to order StarKist to pay a $100 million criminal fine in installments, with $10 million due in 30 days (despite the fact that StarKist's recent cash balance has dropped below $10 million) and five equal installments of $18 million over the next five years. DOJ's proposal does not give StarKist the flexibility that it needs in order to focus on resolving the remaining civil cases. StarKist should prioritize civil restitution and should be able to use its immediate free cash to try to resolve the remaining civil cases expeditiously. Therefore, the criminal fine should be scheduled to pay the majority of the fine, without interest, in the last half of the five-year period so that StarKist both has an opportunity to resolve the civil cases and also, if necessary, can ask DOJ to reduce the fine if the Company's ability to pay projections come true. StarKist's proposal is similar in structure to the Bumble Bee fine which was also graduated, with higher payments due in later years.

In order to safeguard StarKist's ability to pay restitution to civil plaintiffs and allow StarKist to be competitive in the market, StarKist respectfully requests that the Court enter judgment on StarKist's proposal and impose no term of probation.

**A. StarKist's Proposal**

To address the Court's concerns regarding StarKist's ability to make restitution to civil plaintiffs, StarKist proposes the following fining structure that accounts for two key contingencies: civil liability and the potential sale of Techpack.

StarKist proposes the imposition of a fine of $100 million, which may be reduced upon the occurrence of one (or both) of two separate concrete and objective events. However, under no circumstances will the fine be less than $50 million.

*First*, StarKist will use all of its projected free cash flow over the next five years towards the payment of a criminal fine and civil liability. To the extent civil liability is more than the available free cash flow, then the criminal fine will be reduced below $100 million. Starting with StarKist's estimated free cash flow of $171 million, StarKist first subtracts the $54 million that has been used in 2019 to settle several Direct Action Plaintiff ("DAP") lawsuits. StarKist

then subtracts the minimum $50 million criminal fine, which it has already agreed to and will pay over the next five years. This leaves StarKist with $67 million to pay either a criminal fine or settlements with the three remaining class action plaintiff groups and four remaining DAPs. StarKist proposes a sliding-scale structure such that if StarKist settles with the remaining plaintiffs for less than $17 million, then StarKist will pay DOJ $50 million in additional fines ($67 million available cash minus $17 million civil settlements), resulting in a $100 million criminal fine. If StarKist settles its remaining civil cases for $67 million or higher, then all of StarKist's free cash flow will have been spent on civil restitution and StarKist would be unable to pay an additional criminal fine. If StarKist settles for anywhere between $17 million and $67 million, StarKist would remit any remainder to DOJ. In other words, if StarKist settles the remaining cases below its estimates, DOJ's fine will increase.

DOJ objects that StarKist's free cash flow projections are understated and, therefore, it cannot agree to any reduction of the fine based on free cash flow estimates. As StarKist has explained, StarKist believes its free cash flow is overstated, if anything, because it assumes that StarKist can continue growing despite the fact that it will soon reach its maximum capacity and may not be able to meet demand for pouches because it does not have the capital necessary to expand its facilities in American Samoa. If the Court is not inclined to use StarKist's free cash flow estimate as the basis for assessing the amount of cash available to pay fines and settlements, StarKist requests an evidentiary hearing on the projected growth rates that the experts applied.

*Second*, with respect to Techpack, StarKist makes the following proposal: if StarKist's shares in Techpack are sold over the next five years, StarKist will pay the additional $50 million to DOJ, for a total fine of $100 million.

Unlike DOJ's and the Probation Office's proposal, StarKist's proposed structure would allow the Court to make a concrete finding on StarKist's ability to pay at the time of sentencing, consistent with *United States v. Robinson*. Just as it did in the Bumble Bee case, the Court could impose a fine of $100 million, subject to reduction by up to $50 million if certain specified conditions occur (*i.e.*, if StarKist settles its remaining civil cases for more than estimated, StarKist would pay less than the $100 million fine or if StarKist does not sell Techpack, StarKist

would pay less than the $100 million fine). If, and only if, one or both of those conditions occur, would StarKist's fine decrease.

### B. The Court May Not Modify the Fine in the Future on Its Own or at StarKist's Request

The Court cannot impose a term of supervised release or probation that would allow it to modify StarKist's fine at a later date, after reconsidering StarKist's ability to pay. Structuring conditions of probation specifically to ensure that the Court can revisit the amount of the fine at a future point in time is inconsistent with the Ninth Circuit's holding in *United States v. Robinson* and clear congressional intent to the contrary. Ninth Circuit case law is clear that district courts must determine a defendant's ability to pay *before* imposing a criminal fine. *Robinson*, 20 F.3d at 1035. In *Robinson*, the Ninth Circuit squarely rejected the district court's decision to leave it up to the probation officer to make, at some time in the future, the determination of whether the defendant would be able to pay a fine. *Id.* at 1034. And once a fine is imposed, it can only be modified by government petition. *See* 18 U.S.C. § 3573. Congress's intent to limit a defendant's ability to modify the amount of a criminal fine is clear—the provision of the code that allowed a defendant to unilaterally petition to modify a fine was repealed in 1987. *See United States v. Hardy*, 935 F.2d 276 (9th Cir. 1991) (citing Pub. L. No. 100–185, 101 Stat. 1282 (1987)).

The Court should not postpone the determination of StarKist's ability to pay until StarKist's financial failure becomes an absolute certainty, at which point StarKist would have to undertake, again, the costly process of proving its inability to pay. Doing so is clearly improper under both *Robinson* and the relevant statutory provisions. StarKist sought an order finding that it is unable to pay the full $100 million fine. But in the alternative, StarKist requests a fine that sets a $100 million fine with predetermined conditions under which the fine would be reduced.

### C. Probation Is Unnecessary Here

DOJ and StarKist have agreed to recommend that there be no term of probation included in StarKist's sentence. *See* Plea Agreement ¶ 10(c), Nov. 14, 2018, ECF No. 24. The Probation Office recommends probation only if the Court adopts StarKist's proposed safety-valve approach

to the fine. If DOJ's proposal (a fine of $100 million on a payment plan) is imposed, StarKist understands that the Probation Office agrees that probation is not necessary here.

Even in the event that the Court agrees with StarKist's proposal and adopts a safety-valve approach to the fine, probation is unnecessary here. StarKist—a company that pled guilty and cooperated with DOJ throughout its investigation—has already instituted a robust compliance program and has an in-house finance department to ensure StarKist's payment of a criminal fine. Additionally, imposing probation would result in another unwarranted sentencing disparity between StarKist and Bumble Bee. *See United States v. Bumble Bee Foods, LLC*, No. 3:17-CR-249-EMC, ECF No. 37.

In the PSR, the Probation Office recommended a term of probation "if such a sentence is necessary to ensure that changes are made within the organization in order to reduce the likelihood of future criminal conduct, and it is necessary to accomplish one or more of the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2)." Presentence Investigation Report ¶ 86, April 18, 2019, ECF No. 42 ("PSR"). As noted above, StarKist has already made significant organizational changes through the hiring of a General Counsel and the implementation of various antitrust trainings. StarKist has accepted responsibility for its former employee's wrongdoing and has taken sufficient steps to ensure the conduct is not repeated. A $100 million fine, without probation, surely accomplishes the purposes of sentencing set forth in § 3553, specifically the need to "reflect the seriousness of the offense" and "to afford adequate deterrence." 18 U.S.C. § 3553(a)(2). A term of probation would in fact go against other provisions of § 3553, including the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

StarKist also does not need probation to assess StarKist's "ongoing ability to pay its criminal fine." And no restrictions are necessary to "safeguard the organizations [sic] ability to make payments." *See* PSR ¶ 44. If the Court imposes a $100 million fine with the safety valves that StarKist proposes, StarKist would be required to prove to the Court that the safety-valve conditions have been met and will notify DOJ and the Court if it is unable to make payments.

StarKist also recognizes and accepts its responsibility to pay the criminal fine the Court imposes. StarKist will also comply with its obligation under 18 U.S.C. § 3572(d)(3) to update the Court if its financial condition materially changes. If StarKist's finances improve, the Court could adjust the payment schedule. StarKist has no intention to make any business decisions that would threaten its ability to make payments and understands that any decision that would draw scrutiny from DOJ or the Court would undoubtedly result in StarKist paying the maximum fine amount.

**D. StarKist Requests a Reasonable Payment Plan**

StarKist also requests that the Court approve StarKist's request for a reasonable payment schedule without interest. StarKist requests the following payment schedule so that StarKist's free cash flow would first go to restitution and then to a criminal fine: (1) an initial payment of $250,000 due within 30 days after the Court enters a final judgment; (2) four annual payments of $5 million, the first of which will be due one year after the Court enters a final judgment; and (3) a final payment for the remaining amount of the fine due five years after the Court enters a final judgment. This installment schedule will also give StarKist sufficient time to request that the government petition the Court to modify the fine should StarKist's financial condition prevent it from paying the entire fine.

StarKist made this proposal to DOJ, but DOJ indicated that it would not compromise on its proposed payment schedule. StarKist alternatively proposed to DOJ that StarKist adopt the same payment schedule as the Bumble Bee installment plan (but with all payments multiplied by up to four to reflect that the StarKist fine is up to four times higher), but DOJ also rejected that proposal. Instead, DOJ insists on its original payment schedule, which calls for StarKist to pay a fine of $10 million within 30 days. StarKist respectfully asks that the Court reject DOJ's proposal and, at a minimum, set a payment plan that calls for an initial payment that StarKist could potentially pay from its available cash on hand. StarKist also asks that the Court consider its need to make civil restitution and its desire to reach speedy resolutions with the civil plaintiffs in scheduling the remaining installments, with graduating installments that increase over time. Doing so will comply with the statutory objectives of prioritizing civil restitution and imposing the criminal fine in the shortest installment period possible. *See* 18 U.S.C. §§ 3572(b) & (d)(2).

* * *

StarKist respectfully requests that the Court adopt StarKist's proposal and impose no term of probation.

## III. STATEMENT OF THE UNITED STATES

As demonstrated over the course of these sentencing proceedings, StarKist can afford a $100 million fine. Nevertheless, if future events threaten StarKist's ability to make restitution or remain financially viable, the government can petition the Court to modify StarKist's fine. Alternatively, StarKist—without the consent of the government—can petition to adjust its payment installment schedule (albeit without reducing its overall fine).

In all other respects, however, a fine is a final judgment. Therefore, even if the Court imposes a term of probation, StarKist cannot seek to reduce its fine by seeking to modify its terms of probation. In this case, moreover, pursuant to the plea agreement, the parties agreed not to recommend probation. Therefore, while the government appreciates that the conditions recommended by the Probation Department would help secure the payment of StarKist's fine, the government maintains that StarKist can afford a $100 million fine and stands by its agreement not to recommend probation.

### ***1. StarKist Fails to Justify Why It Should be Permitted to Seek Reduction of its Fine Independently or Why a Sentence Containing Financial Contingencies is Necessary***

StarKist has failed to establish that it cannot afford a $100 million fine. The combined value of Techpack and StarKist's projected future cash flow is sufficient to pay a $100 million fine and settle the remaining civil claims against it, as estimated by StarKist. (*See* StarKist's Reply to U.S. Resp. to StarKist's Techpack Mem., Dkt. No. 142 at 13.) The government disputes StarKist's projected growth figures, as well as its estimate of civil damages; however, the fact that StarKist can afford a $100 million fine even using its own growth and damages projections shows the unlikeliness that a guidelines fine will hinder StarKist's ability to make restitution or remain viable as a company. Given StarKist's projections, the Court should not be concerned that a $100 million fine will jeopardize StarKist's ability to settle the remaining civil claims. Additionally, the plea agreement precludes imposing a sentence setting forth financial

contingencies that lower StarKist's fine in the event those contingencies occur. Absent a finding that StarKist has an inability to pay, the Court may not reduce StarKist's fine.

### 2. *The Government Can Petition to Remit StarKist's Fine and StarKist Can Petition to Adjust its Payment Schedule Without the Government's Consent*

If future events—whether civil settlements, stagnant growth, or other unforeseen circumstances—threaten StarKist's ongoing financial viability, then, as the government has in the past, it will petition the Court to modify StarKist's fine.[2] *See* 18 U.S.C. § 3573 ("Upon petition of the Government showing that reasonable efforts to collect a fine or assessment are not likely to be effective, the court may, in the interests of justice, remit all or part of an unpaid fine . . . ."). StarKist offers no basis to question the government's good faith when the government asserts it will petition to modify StarKist's fine if its financial circumstances materially change.

StarKist, however, need not rely on the government to seek relief. When a judgment imposing a fine permits a defendant to pay its fine through installments, either party may petition the court to adjust the payment schedule if the economic circumstances of the defendant materially change. 18 U.S.C. § 3572(d)(3).

Here, while the parties dispute the specific payment schedule, they agree that an installment schedule is necessary. Therefore, if StarKist's economic circumstances materially change, it can petition to modify its installment schedule. *Id*. While StarKist may not seek a *reduction* of its fine under this provision, it can delay payments if such a delay is in the "interests of justice." *Id.*; *see also United States v. Duck*, No. 18-10180, 2019 WL 2473390, at *1 (9th Cir. 2019) (noting that a "court may, under certain conditions, adjust a defendant's payment schedule") (citing section 3572(d)(3)). In fact, StarKist could seek to extend its installment schedule substantially. *See* 18 U.S.C. § 3613(b) ("The liability to pay a fine shall terminate . . .

---

[2] The Antitrust Division has frequently petitioned to remit or adjust the payment schedule for corporate fines in the past. *See e.g.*, *United States v. Asiana Airlines, Inc.*, No. 09-CR-99 (D.D.C. Apr. 27, 2010), Dkt No. 19; *United States v. Cargolux Airlines Int'l S.A.*, No. 09-CR-97 (D.D.C. May 7, 2010), Dkt No. 16; *United States v. Japan Airlines Int'l Co., Ltd.*, No. 08-CR-106 (D.D.C. Mar. 1, 2010), Dkt. No. 14; *United States v. Korean Air Lines Co., Ltd.*, No. 07-CR-184 (D.D.C. Aug. 8, 2012), Dkt. No. 27; *United States v. Horizon Lines, LLC*, No. 11-CR-71 (D.P.R. Apr. 28, 2011), Dkt. No. 36; *United States v. Hynix Semiconductor Inc.*, No. 05-CR-249 (N.D. Cal. June 12, 2009), Dkt. No. 31.

20 years from the entry of judgment . . . ."). Therefore, StarKist cannot seriously contend that it will be forced "to rely on the potential good graces" of the government when it retains the right to petition the Court without the consent of the government to modify its installment schedule. (StarKist's Resp. to U.S. Sentencing Mem., Dkt. No. 77 at 16.)

### *3. Imposing a Fine as a Condition of Probation Does Not Permit StarKist to Seek to Reduce its Fine*

Section 3563(a) provides: "If the court has imposed and ordered execution of a fine and placed the defendant on probation, payment of the fine or adherence to the court-established installment schedule *shall* be a condition of the probation." 18 U.S.C. § 3563 (emphasis added). The government agrees with StarKist that the imposition of such a condition does not authorize StarKist to seek to reduce its fine by moving to modify its terms of probation under section 3563(c). When a court imposes a criminal fine, it is a final judgment and can only be modified pursuant to specified circumstances. 18 U.S.C. § 3572(c); *see also United States v. Handa*, 122 F.3d 690, 691 (9th Cir. 1997) ("A district court does not have inherent power to resentence defendants at any time.") (quoting *United States v. Minor*, 846 F.2d 1184, 1187 (9th Cir. 1988)). Specifically, a fine can be modified upon a petition from the government under section 3573 (discussed above), corrected for technical error under Rule 35 of the Federal Rules of Criminal Procedure, or corrected or modified on appeal under section 3742. 18 U.S.C. § 3572(c).

Requiring that a fine be paid or an installment plan adhered to as a condition of probation does not provide defendant with an alternative avenue to seek a reduction of its fine. While a district court "may modify, reduce, or enlarge the conditions of a sentence of probation at any time prior to the expiration or termination of the term of probation," 18 U.S.C. § 3563(c), it cannot change the amount of the fine. Rather, any modification of probation conditions is subject to "the provisions applicable to the initial setting of the conditions of probation." *Id.* One such provision is section 3572(c), which allows a district court to modify or remit "a sentence to pay a fine" only "under section 3573." 18 U.S.C. § 3572(c)(1). *Cf. United States v. Wyss*, 744 F.3d 1214, 1218-19 (10th Cir. 2014) (holding that section 3563(c) does not authorize district court to modify restitution order); *United States v. Banks*, 62 F. Supp. 3d 125, 130-31

(D.D.C. 2014) (same; analyzing interplay between sections 3563(c) and 3664(o)).

Therefore, while the Court is permitted to impose a term of probation and set payment of the fine as a condition of probation, such a sentence will not permit StarKist to petition to reduce its fine under section 3563(c).[3]

***4. Under the Plea Agreement, the Parties Agree Not to Recommend Probation***

The government is ***not*** requesting that the Court impose a term of probation. Pursuant to the plea agreement, "Both parties will recommend that no term of probation be imposed." (Plea Agreement, Dkt. No. 24 ¶ 10(c).) A sentence that includes probation, however, will not void the plea agreement. (*Id.*) Accordingly, the plea agreement does not preclude the Court from imposing a $100 million fine and requiring payment of that fine as a condition of probation.

If the Court is inclined to order a term of probation, the government believes that the conditions recommended by the Probation Department would effectively "safeguard the organization's ability to make payments." U.S.S.G. § 8D1.1(2). The government has concerns that, while aware of the criminal investigation, StarKist has converted liquid assets to an illiquid form and transferred assets to its parent. Specifically, in 2017, *after* becoming aware of the criminal investigation and civil claims against it, StarKist invested approximately $66 million in Techpack, which it (wrongly) contends to be a completely illiquid asset. In 2016, *after* becoming aware of the criminal investigation and civil claims against it, StarKist issued a $20 million dividend to its parent, Dongwon Industries. (Expert Report of Professor Robert M. Daines ("Daines Report"), Dkt. No. 80-1, Figure 5.) Therefore, if the Court imposes probation, the requirements recommended by Probation that StarKist "shall not waste, nor without permission of the probation officer, sell, assign, or transfer its assets" and "provide Probation and the government with (a) quarterly reports of its balance sheets, income statements and statements of cash flow, (b) annual audited financial statements, and (c) copies of any civil antitrust

[3] In *United States v. Miller*, 205 F.3d 1098, 1100 (9th Cir. 2000), the Ninth Circuit held that 18 U.S.C. § 3583(e)(2) allows a court to modify a fine where payment of the fine is a condition of the defendant's supervised release. The defendant in *Miller*, however, was not seeking a reduction of his fine. Rather, he sought to credit costs he incurred because of "government conduct" against his outstanding fine balance. *Id.* Accordingly, the government does not read *Miller* as authorizing a defendant to seek to *reduce* a fine under section 3583(e)(2). Moreover, *Miller* does not address a court's authority under section 3563(c).

settlements" are appropriate. (Statement of United States Probation Department.)

Regardless of whether the Court imposes a term of probation, assuming the Court imposes an payment schedule, the Court should require StarKist to "notify the court of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay the fine." 18 U.S.C. § 3572(d)(3). StarKist retains the right to petition to modify the installment schedule imposed, but should not be permitted to adjust its installment schedule if it continues to transform liquid assets into an illiquid form or issue dividend payments to its parent before paying its criminal fine or settling civil claims against it. If anything, the issuance of dividend payments would warrant accelerating StarKist's payment schedule. *Id.* (court may "require immediate payment in full, as the interests of justice require").

***5. The Government's Proposed Installment Schedule Is Reasonable***

StarKist has failed to show that its proposed back-loaded installment schedule is necessary. StarKist proposes paying only $250,000 at the time of judgment, just $20 million over four years, and the remaining nearly $80 million five years from judgment. Such a back-loaded installment plan is not necessary given that the length of time over which scheduled payments can be paid "should be the shortest time in which full payment can reasonably be made." 18 U.S.C. § 3572(d)(2).

The government proposes an installment schedule in which StarKist pays its fine over the course of five years, in which StarKist makes an initial payment of $10 million followed by five annual payments of $18 million, without accruing interest. The government's proposed installment schedule was recommended by the government's expert Dr. Dale Zuehls and is especially reasonable given that Zuehls' assessment of StarKist's ability to pay did not account for the value of Techpack and included projections that assumed StarKist's civil liability exceeded its upper estimate. Moreover, StarKist's growth so far in 2019 (at least as of the end of May) was substantially higher than projected by Zuehls. (StarKist's May 31, 2019 Financials, Dkt. No. 127-2.)

StarKist's proposed installment schedule is essentially a request for an interest-free loan from the government to pay its criminal fine. Such a loan is not necessary when StarKist has

failed to show that it cannot borrow additional money from outside lenders. And while StarKist has repeatedly cited its current cash on hand as a basis to reduce its fine, under its existing loan agreement, StarKist can borrow an additional $20 million without permission from its lenders. (StarKist May 31, 2019 Financials.) StarKist's expert concluded in May 2019 that StarKist was not "cash poor." (Daines Report, ¶ 140.)

## IV. PROBATION OFFICE'S STATEMENT

The probation office believes that if Starkist agrees to pay the full $100,000,000 fine in an agreed upon structure, and the Court has no significant concerns over their ability to pay that a term of probation is not necessary to achieve the goals of sentencing pursuant to USSG § 3553. However, if there are still concerns about the ability to pay and/or the transferring/selling/etc. of large assets, it appears a short term of probation of 6 months to a year would help monitor Starkist's financial situation. A short term is recommended because it be at least until some civil liability payouts are made and the first lump sum payment is completed just to make sure they start off with a good momentum in regard to fine payments, and also to serve as public deterrence. If the Court decides to impose a special condition of, for example, community service then the probation office believes a longer term of probation of five years would be necessary to ensure completion of the condition.

If probation is ordered, the following standard conditions shall be imposed:

1) Within thirty days from the date of this judgment, the defendant organization shall designate an official of the organization to act as the organization's representative and to be the primary contact with the probation officer;

2) The defendant organization shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

3) The defendant organization shall notify the probation officer ten days prior to any change in principal business or mailing address;

4) The defendant organization shall permit a probation officer to visit the organization at any of its operating business sites;

5) The defendant organization shall notify the probation officer within seventy-two hours of any criminal prosecution, major civil litigation, or administrative proceeding against the organization;

6) The defendant organization shall not dissolve, change its name, or change the name under which it does business unless this judgment and all criminal monetary penalties imposed by this court are either fully satisfied or are equally enforceable against the defendant's successors or assignees; and

7) The defendant organization shall not waste, nor without permission of the probation officer, sell, assign, or transfer its assets.

The following special condition is also recommended:

1) StarKist provide Probation and the government with (a) quarterly reports of its balance sheets, income statements and statements of cash flow, (b) annual audited financial statements, and (c) copies of any civil antitrust settlements.

Dated: September 4, 2019

Respectfully submitted,

LATHAM & WATKINS LLP
Niall E. Lynch
Sean M. Berkowitz
Ashley M. Bauer

By: ______________________
Niall E. Lynch

*Counsel for Defendant StarKist Co.*

/s/ *Andrew J. Mast*
ANDREW J. MAST
Trial Attorney
U.S. Department of Justice
Antitrust Division

**SIGNATURE ATTESTATION**

I am the ECF user whose identification and password are being used to file the foregoing Joint Statement Regarding Sentencing. Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I, Niall E. Lynch, attest that concurrence in the filing of this document has been obtained.

Dated: September 4, 2019

/s/ Niall E. Lynch
Niall E. Lynch (Bar No. 157959)